No. 19-11047

_____

No. 19-11047 consolidated with No. 20-11233

_____

IN THE

# United States Court of Appeals

FOR THE FIFTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

NORMAN WAYNE CHANDLER,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION
THE HONORABLE BARBARA M.G. LYNN PRESIDING

---

## Brief of the Appellant

---

Peter C. Smythe

SMYTHE PC

777 Main Street, Suite 600
Fort Worth, Texas 76102
Telephone: (817) 666-9475
Email: petersmythe@appeals.me

*Appointed Counsel for Appellant*

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of the case. These representations are made so that this Court's judges may evaluate possible disqualification or recusal.

*Appellant*:

- Norman Wayne Chandler, *appellant*

- Bree Boulware West, *trial counsel*
  Craig A. Capua, *trial counsel*
  Veretta L. Frazier, *trial counsel*
  West & Associates LLP
  320 South RL Thornton Fwy.
  Suite 300
  Dallas, Texas 75203
  Telephone: (214) 941-1881

- Peter C. Smythe, *appellate counsel*
  SMYTHE PC
  777 Main Street
  Suite 600
  Fort Worth, Texas 76102
  Telephone: (817) 666-9475

*Appellee*:

- PJ Meitl, *trial counsel*
  Leigha Simonton, *appellate counsel*
  U.S. Attorney's Office – Dallas
  1100 Commerce Street
  Third Floor
  Dallas, Texas 75242
  Telephone: (214) 659-8680

*/s/ Peter C. Smythe*

Peter C. Smythe
*Appointed Counsel for Appellant,*
*Norman Wayne Chandler*

## Recommendation on Oral Argument

Norman Wayne Chandler does not request oral argument. The issue presented is straight-forward, and the record is short. Counsel does not believe oral argument would likely help the Court to determine the issue.

# Table of Contents

Certificate of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Recommendation on Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    *The Indictment.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

    *The Plea of Guilty* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

    *The PSR's Offense-Conduct Summary.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    *The PSR's Guidelines Calculations.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    *Chandler's Objections.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    *The Addendum* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    *The Sentencing Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    *Chandler's Post-Sentence Motions.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

Argument and Authorities........................................................ 15

    The Government breached the duty of good faith and fair dealing
    it owed to Norman Wayne Chandler when it presented an inaccurate
    material fact to the district court at sentencing...................................15

    *Standard of Review* ...........................................................15

    *The Government's Duty of Good Faith and Fair Dealing* ............................... 16

    *The Implied Provisions of Chandler's Plea Agreement*................................ 17

    *The Sentencing Guidelines and Presentence Report*.................................. 18

    *The Government's Misstatement of Material Fact*.....................................20

    *The Government Breached Its Duty*.................................................23

    *The Court's Rule 36 Denial Was Not Dispositive*.................................... 24

    *The Error Mandates Reversal*..................................................... 25

Conclusion ...................................................................27

Certificate of Service .......................................................... 29

Certificate of Compliance ...................................................... 30

ECF Certifications ............................................................ 31

# Index of Authorities

*Napue v. Illinois,*
    360 U.S. 264 (1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Santobello v. New York,*
    404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). . . . . . . . . . . . . . . . . . . . . . . . . 16

*Stumpf v. Robinson,*
    722 F.3d 739 (6th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Anderson,*
    773 Fed. App'x 127 (4th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Block,*
    660 F.2d 1086 (5th Cir. Unit B Nov. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 23

*United States v. Burns,*
    433 F.3d 442 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*United States v. Cluff,*
    857 F.3d 292 (5th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*United States v. Cook,*
    607 Fed. App'x 497 (6th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*United States v. Dean,*
    940 F.3d 888 (5th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Goldfaden,*
    959 F.2d 1323 (5th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. James,*
    800 Fed. App'x 290 (5th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*United States v. Kerdachi,*
    756 F.2d 349 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*United States v. McClure,*
854 F.3d 789 (5th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Muñoz,*
408 F.3d 222 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 25

*United States v. Murray,*
897 F.3d 298 (D.C. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Omigie,*
977 F.3d 397 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Pizzolato,*
655 F.3d 403 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 23

*United States v. Reeves,*
255 F.3d 208 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 26

*United States v. Roberts,*
624 F.3d 241 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Saling,*
205 F.3d 764 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 23, 25

*United States v. Spencer,*
513 F.3d 490 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## Statutes

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 22

18 U.S.C. § 3553(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

18 U.S.C. § 3582(c)(1)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19

21 U.S.C. § 841(b)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21 U.S.C. § 853 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 991(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. § 994(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## Rules

Fed. R. App. P. 4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Crim. P. 35 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fed. R. Crim. P. 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## Sentencing Guidelines

U.S.S.G. § 2D1.1(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

U.S.S.G. § 2D1.1(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 20

U.S.S.G. § 2D1.1(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## Other Authorities

23 Williston on Contracts § 63.22 (4th ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

No. 19-11047

———————————

No. 19-11047 consolidated with No. 20-11233

———————————

IN THE

# United States Court of Appeals

FOR THE  FIFTH CIRCUIT

———————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

NORMAN WAYNE CHANDLER,

*Defendant-Appellant.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS – DALLAS DIVISION
THE HONORABLE BARBARA M.G. LYNN PRESIDING

---

## Brief of the Appellant

---

## Statement of Jurisdiction

The district court had jurisdiction over the case pursuant to 18 U.S.C. 3231. The jurisdiction of this Court is invoked under 28 U.S.C. 1291 as this is an appeal from final decisions

entered by the United States District Court for the Northern District of Texas. Jurisdiction is also had under 18 U.S.C. 3742.

The district court pronounced sentence on September 11, 2019, and entered a written judgment the same day. ROA.19-11047.50–56, 65. Norman Wayne Chandler filed a written notice of appeal on September 20, 2019, which was timely under Federal Rule of Appellate Procedure 4. ROA.19-11047.57–58.

Chandler filed a post-sentence Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release) and Motion in the Alternative to Correct a Clerical Error Pursuant to Fed. Crim. P. 36 on October 23, 2020. ROA.20-11233.236–75 (*sans* exhibits). The district court denied the motions on December 8, 2020. ROA.20-11233.429–32. Chandler filed an amended notice of appeal on December 14, 2020, which included the appeal of these motions. ROA.20-11233.104–05. The amended notice was timely filed under Federal Rule of Appellate Procedure 4. This Court subsequently consolidated both appeals.

## Statement of the Issue

The Government breached the duty of good faith and fair dealing it owed to Norman Wayne Chandler when it presented an inaccurate material fact to the district court at sentencing.

## Statement of the Case

### The Indictment

A grand jury returned an indictment, charging Norman Wayne Chandler of Conspiracy to Possess with Intent to Distribute a Controlled Substance, namely methamphetamine, in violation of 21 U.S.C. 846. ROA.19-11047.7. The indictment also charged a second offense of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. 841(b)(1)(C). ROA.19-11047.8. This charge also involved methamphetamine. ROA.19-11047.8. Finally, it included a forfeiture notice of property constituting or derived from the proceeds of the offenses pursuant to 21 U.S.C. 853(a). ROA.19-11047.9.

### The Plea of Guilty

Chandler pleaded guilty to the second count—Possession with Intent to Distribute a Controlled Substance—with the benefit of a plea agreement. ROA.19-11047.92–100. He executed a factual résumé, attesting to facts in support of his plea of guilty. ROA.19-11047.38–40. He stipulated to the following facts.

> 1. Between in or about October 2016 and April 2017, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, Norman Chandler, knowingly possessed with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C).

> 2. More specifically, between in or about October 2016 and April 2017, while in Dallas, Texas, Chandler purchased ounce quantities of methamphetamine from other individuals, which he would then sell to other individuals.

3. The defendant agrees that the defendant committed all the essential elements of the offense. This factual résumé is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count Two of the Indictment.

ROA.19-11047.38–40.

The district court accepted his plea, and adjudged him guilty of the offense.

ROA.19-11047.45.

**The PSR's Offense-Conduct Summary**

The probation officer conducted an independent investigation of Chandler's offense conduct. ROA.19-11047.105. She reviewed the indictment, factual résumé, and investigative materials provided by the Drug Enforcement Administration ("DEA").

ROA.19-11047.105. She verified and supplemented the information by means of an interview with Special Agent Justin Hitz. ROA.19-11047.105.

The Irving Police Department ("IPD") was investigating an unrelated offense when an unindicted coconspirator ("UCC1") provided information that Chandler initially had begun selling methamphetamine for Joe Montez, but later distributed a kilogram of methamphetamine daily on his own. ROA.19-11047.105. The UCC1 informed detectives that Chandler had received his methamphetamine from "D," who was Estevan Adrian Graciano. ROA.19-11047.105.

IPD officers executed a search warrant on March 21, 2017, at Chandler's residence. ROA.19-11047.106. There, they found 1.1853 grams of methamphetamine, a loaded 9-millimeter firearm, numerous distribution bags, digital scales, and the like. ROA.19-11047.106. Chandler was not present at the residence, but was later arrested on based on a federal arrest warrant. ROA.19-11047.106. A search of his person revealed approximately 3.3 grams of methamphetamine hidden in his pants. ROA.19-11047.106.

Both DEA agents and IPD detectives interviewed Chandler at the Dallas County Jail on June 6, 2018, and he admitted he had purchased and distributed at least 100 kilograms of methamphetamine from Graciano over a six-month period. ROA.19-11047.105. He said he had met Graciano through Montez's own purchases from Graciano, and he began dealing directly with Graciano by buying nine-ounce quantities for $2,500. ROA.19-11047.105. He quickly moved up to kilogram quantities priced anywhere from $7,000 to $8,000. ROA.19-11047.105. He bought these quantities daily. ROA.19-11047.105. He continued to use Graciano as a source until April 21, 2017, when he had a motorcycle accident. ROA.19-11047.105.

**The PSR's Guideline Calculations**

The probation officer used Chandler's confession to establish the Base Offense Level. He had admitted that he had purchased and distributed at least 100 kilograms of meth-amphetamine during the relevant period. ROA.19-11047.107. That amount of meth-

amphetamine established a Base Offense Level of 38 pursuant to U.S.S.G. 2D1.1(c)(1). ROA.19-11047.108.

The officer added a two-point enhancement pursuant to U.S.S.G. 2D1.1(b)(1) because a firearm had been found in the residence located at 820 Chamberlain Street in Irving, Texas. ROA.19-11047.108. Another two-point enhancement was added pursuant to U.S.S.G. 2D1.1(b)(5) based upon Graciano's receiving of liquid methamphetamine from Mexico. ROA.19-11047.108. Chandler qualified for Acceptance of Responsibility which brought his Total Offense Level to 39. ROA.19-11047.108.

Chandler's criminal-history score totaled 9 based upon three separate felony convictions. ROA.19-11047.112. He had received a five-year sentence for Possession of a Controlled Substance in 1999, another five-year sentence for Attempted Capital Murder in 2000, and an eleven-year sentence for Engaging in Organized Criminal Activity in 2007. ROA.19-11047.109–11. Each of these convictions carried three criminal-history points. He committed the instant offense while serving a criminal-justice sentence so another two points were added. ROA.19-11047.112. These scores totaled eleven, which established a Criminal History Category of V. ROA.19-11047.112.

The probation officer calculated an advisory Guideline Imprisonment Range of 360 months to life based upon a Total Offense Level of 39 and Criminal History Category of V. ROA.19-11047.121. Yet the maximum term of imprisonment was 20 years. ROA.19-11047.121. Consequently, she adjusted the advisory Guideline Imprisonment Range to a term of imprisonment of 240 months. ROA.19-11047.121. The officer advised

the district court that four pending state criminal cases were not related to the instant of-fense so it could decide to run Chandler's anticipated sentence consecutively to those an-ticipated state sentences. ROA.19-11047.121.

**Chandler's Objections**

Chandler filed numerous objections to the PSR. He first objected to the two-point en-hancement for the presence of a firearm pursuant to U.S.S.G. 2D1.1(b)(1), arguing that he was not living in the residence where the firearm was found at the time of the execu-tion of the search warrant. ROA.19-11047.126–27. He also objected to the report for its failure to apply a mitigating-role adjustment. ROA.19-11047.127–30. He argued that the evidence demonstrated that he was not anything more than a street-level dealer which warranted a four-point deduction. ROA.19-11047.129–30. He argued that a mitigating-role adjustment would also decrease his Base Offense Level to 32. ROA.19-11047.131. He also objected to his criminal-history score, arguing that his attempted-capital-murder conviction should not have been counted because it was "outside of the scope of consid-eration." ROA.19-11047.131–32.

**The Addendum**

The probation officer rejected Chandler's objections *in toto*. She cited evidence support-ing the inference that Chandler was living at the residence where the firearm was found when the warrant was executed. ROA.19-11047.135. The search revealed meth-amphetamine, the loaded firearm, numerous distribution bags, scales, security cameras,

Chandler's social security card, male and female clothes inside a bedroom's dresser and closet, and bills addressed to Chandler. ROA.19-11047.135. Chandler's long-term girl-friend claimed ownership of the gun, but could not say where it was located by agents. ROA.19-11047.135. The officer concluded the enhancement was appropriate. ROA.19-11047.135.

The officer rejected a mitigating-role deduction based upon Chandler's admissions that he had purchased and distributed at least 100 kilograms of methamphetamine. ROA.19-11047.136. His confession, she said, coupled with the drug-related items in the residence and the loaded firearm, demonstrated he was not substantially less culpable than other co-conspirators. ROA.19-11047.136. She left the Base Offense Level un-changed because he was not entitled to a mitigating-role adjustment. ROA.19-11047.136.

The officer also rejected Chandler's objection to his attempted-capital-murder convic-tion being counted in his criminal-history score. ROA.19-11047.137. She observed that he had been released from prison on January 19, 2005, for that crime and that this date fell within 15 years of the instant offense, which began in October 2016. ROA.19-11047.104, 137.

**The Sentencing Hearing**

Chandler withdrew his criminal-history score objection at the sentencing hearing, but maintained his other objections. ROA.19-11047.66–69, 70. The court overruled his miti-gating-role objection without further argument, but asked to hear from the Government

about the firearm enhancement. ROA.19-11047.69. The Government argued that the objection was moot because of the statutory cap. ROA.19-11047.70. The court accepted that response, but still overruled the objection. ROA.19-11047.70. It determined that the Total Offense Level was 39 and the Criminal History Category was V. ROA.19-11047.70. The advisory Guideline Imprisonment Range was calculated to be 240 months because of the statutory cap. ROA.19-11047.68, 70.

   The court noted Chandler's debilitating injuries from a motorcycle wreck, and his history of substance abuse. ROA.19-11047.71–72. It heard from Chandler's common-law wife, Shawna Ogletree, who provided character evidence about him. ROA.19-11047.76. Chandler's counsel argued, "He absolutely cannot do what he used to," saying his injuries prevented him from pursuing any future life of crime. ROA.19-11047.76–77. The court recognized that he was "not likely to be dealing drugs when he gets out because he can barely walk." ROA.19-11047.78. It added, "So I can't ignore that." It asked the Government to opine on the appropriate sentence.

   The prosecutor argued that Chandler was driving a stolen motorcycle and "running from the Irving Police Department" when he crashed it into the back of a truck being driven by a federal agent. ROA.19-11047.79. He argued Chandler's admission of distributing 100 kilograms of methamphetamine along should make for a long sentence. ROA.19-11047.79. The court inquired about Chandler's relationship with the truck-driving agent as none of this information was in the PSR. ROA.19-11047.79–80, 81. The

prosecutor said Chandler was trying to kill the agent because he knew he was being investigated. ROA.19-11047.79–80, 81.

The prosecutor referred to 67 Aryan Brotherhood members being indicted, and that Chandler had been receiving methamphetamine from "the biggest supplier in that case," who was Estevan Graciano. ROA.19-11047.80. The court asked about Graciano's sentence and the prosecutor represented it was "about fifteen years." ROA.19-11047.82. He added, "So I understand that issue, Your Honor, but the large chunk of these defendants have been getting twenty-year sentences in Judge Fitzwater's court." ROA.19-11047.82. The court thanked the prosecutor for the related-case information: "And thank you . . . very much for providing that information to me about the other cases. I think everyone knows that I very much like to keep track of related cases." ROA.19-11047.84.

The court then looked to the factors under 18 U.S.C. 3553(a), considered the nature of the offense, and Chandler's medical condition. ROA.19-11047.84–85. It also considered what the Government had represented as fact regarding Graciano.

> I will say that of the things that [the prosecutor] said to me, the things that are most compelling to me are the issues related to the agent but, particularly, the sentence that was given to the Defendant's supplier. It is not, in the Court's view, just for me to give this Defendant more time than his supplier, who is at the top of the food chain in this offense, was given. It may very well be that if we were starting anew, I might be sentencing the Defendant to the 20-year cap, but in light of the fact that the person who was at the top of the food chain received 15 years, the Court will impose a sentence of 15 years. That doesn't mean you're going home anytime soon. That's a long stretch you're going to be doing in federal custody.

ROA.19-11047.86.

The court sentenced Chandler to the same term of imprisonment that it believed Graciano had received—180 months (15 years). ROA.19-11047.87. It ordered that the sentence would run concurrently with state-criminal cases that were relevant conduct to the instant case, and consecutively to sentences anticipated in four other state cases. ROA.19-11047.87. It did not order a fine, but imposed a special mandatory assessment of $100.00. ROA.19-11047.87. It ordered that Chandler serve of supervised release of three years once he was released from prison and pronounced the conditions of the term of supervised release. ROA.19-11047.87-88. Chandler thereafter filed a notice of appeal. ROA.19-11047.57.

**Chandler's Post-Sentence Motions**

Chandler filed a post-sentence motion for compassionate release. ROA.20-11233.232–332, 333–428. He argued that the growing coronavirus pandemic presented an extraordinary and compelling circumstance for compassionate release due to his history of hypertension, obesity, osteomyelitis, methicillin-resistant staphylococcus aureus (MRSA infection), and severe physical injuries. ROA.20-11233.342. In the alternative, the court needed to "correct" his sentence to 160 months based upon the Government's misstatements about Estevan Graciano that it made during the sentencing hearing. ROA.20-11233.367–70. Graciano had been sentenced to 160 months, not 180 months as represented. ROA.20-11233.367–70. This Court held his appeal in abeyance pending the district court's ruling on these motions. ROA.20-11233.83.

The district court denied both of them. ROA.20-11233.429–32. First, it said Chandler had failed to identify any extraordinary or compelling reasons for a sentence reduction consistent with the Sentencing Guidelines policy statement. ROA.20-11233.429. It concluded that, despite his somewhat greater risk from COVID-19, the factors listed in 18 U.S.C. 3553(a) weighed decisively against his release. ROA.20-11233.430. Next, it held that Rule 36 was an inappropriate vehicle to substantively modify Chandler's sentence. ROA.20-11233.431. It added that the Government's misstatement about Graciano, "in light of all of the other sentences imposed on others similarly charged for the instant offense, does not cause this Court to reconsider Defendant's sentence." ROA.20-11233.431. Chandler filed an amended notice of appeal to include the district court's denial of these motions. ROA.20-11233.104. This Court later consolidated both appeals.

## Summary of Argument

The Government entered into a plea agreement with Norman Wayne Chandler that contemplated Chandler pleading guilty to a single count in the indictment in exchange for a dismissal of the rest of the charges and a promise not to prosecute Chandler for any related conduct. Although the agreement acknowledged that sentencing was in the sole discretion of the district court, Chandler had a reasonable expectation that the Government would provide the district court factually accurate information to enable it to impose an appropriate sentence based upon an accurate record.

At the sentencing hearing, the Government argued Chandler's case was one in a larger conspiracy that involved over sixty defendants. The court inquired about the sentence of Chandler's supplier—the "biggest supplier in the case, the top of the food chain." The prosecutor represented that he had been sentenced to "about 15 years," after having assured the court that he could recite the sentences of all the defendants. The court believed the supplier's sentence was particularly compelling and did not believe it was just to sentence Chandler to more than what he had received. Accordingly, it sentenced Chandler to fifteen years' imprisonment. The supplier, however, had been sentenced to 160 months.

The Government breached the duty of good faith and fair dealing it owed Chandler and failed to rectify its breach before the district court lost its ability to modify the sentence. This error requires reversal whether or not the district court was influenced by the Government's misstatement of fact.

## Argument and Authorities

### Issue No. 1

The Government breached the duty of good faith and fair dealing  it owed to Norman Wayne Chandler when it presented an inaccurate material fact to the district court at sentencing.

**Standard of Review**

Whether the Government has breached a plea agreement is a question of law is reviewed *de novo*. *United States v. Reeves*, 255 F.3d 208, 210 (5th Cir. 2001). The standard of review for error should depend on whether the defendant had an opportunity to object before the district court. If he had the opportunity to object and did not, the review is for plain error. *See United States v. Omigie,* 977 F.3d 397, 406–07 (5th Cir. 2020); *see also United States v. Dean*, 940 F.3d 888, 890 (5th Cir. 2019) (holding that this Court reviews as a preserved error when a defendant has not been provided a meaningful opportunity to object). If he did not, then the review is for abuse of discretion. *Id*. Norman Wayne Chandler did not have the opportunity to object at the sentencing hearing so review should be for abuse of discretion.

Chandler's plea agreement contained an appeals waiver. ROA.19-11407.97. The validity of an appeal waiver is reviewed *de novo*. *United States v. Burns*, 433 F.3d 442, 445 (5th Cir. 2005). An alleged breach of a plea agreement may be raised notwithstanding a waiver provision. *United States v. Roberts*, 624 F.3d 241, 244 (5th Cir. 2010). But the defendant

bears the burden of demonstrating the underlying facts that establish a breach. *Id*. He

must prove this by a preponderance of the evidence. *Id.* at 246.

### The Government's Duty of Good Faith and Fair Dealing

The principles governing the Government's obligation to honor the terms of a plea

agreement are well settled. If a guilty plea is entered as part of a plea agreement, the Gov-

ernment must strictly adhere to the terms and conditions of its promises. *United States v.*

*Kerdachi*, 756 F.2d 349, 351–52 (5th Cir. 1985). Furthermore, when a guilty plea "rests in

any significant degree on a promise or agreement of the prosecutor, so that it can be said

to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*

*v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971); *United States*

*v. Saling*, 205 F.3d 764, 767 (5th Cir. 2000). This Court applies general principles of con-

tract law to interpret the terms of a plea agreement and generally will not look beyond the

agreement's four corners if it is unambiguous. *United States v. McClure*, 854 F.3d 789, 793

(5th Cir. 2017); *United States v. James*, 800 Fed. App'x 290, 291 (5th Cir. 2020).

Plea agreements, like all contracts, contain an implied duty of good faith and fair deal-

ing in contract performance. *See, e.g., United States v. Murray*, 897 F.3d 298, 305 (D.C. Cir.

2018); *United States v. Anderson*, 773 Fed. App'x 127, 129 (4th Cir. 2019). "In determin-

ing whether a party has breached the obligation or covenant of good faith and fair dealing,

a court must examine not only the express language of the parties' contract, but also any

course of performance or course of dealing." *United States v. Cook,* 607 Fed. App'x 497,

16

505 (6th Cir. 2015) (quoting 23 Williston on Contracts 63.22 (4th ed.)). Whether particular conduct violates the covenant necessarily depends on the facts of the particular case. *Id.* "[S]ince there is a presumption that all parties act in good faith, the burden of proving a breach of the covenant of good faith and fair dealing is on the person asserting the absence of good faith." *Id.* A party acts in bad faith when, "although not soliciting false evidence, [it] allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see also Stumpf v. Robinson*, 722 F.3d 739, 749 (6th Cir. 2013).

The court must consider "whether the Government's conduct is consistent with the defendant's reasonable understanding of the agreement" to determine whether the terms of a plea agreement have been violated. *United States v. Pizzolato*, 655 F.3d 403, 409 (5th Cir. 2011). It should consider both the express and implied terms of the plea agreement. *See United States v. Muñoz*, 408 F.3d 222, 227 (5th Cir. 2005); *see also United States v. Cluff*, 857 F.3d 292, 298 (5th Cir. 2017).

**The Implied Provisions of Chandler's Plea Agreement**

The Government secured a plea agreement from Norman Chandler that contemplated a plea of guilty to the second count of the indictment in exchange for its promise that it would not bring any additional charges against him based upon the conduct underlying and related to his plea of guilty. ROA.19-11047.92–93, 98. The Government also agreed that it would dismiss, after sentencing, any remaining charges in the pending indictment or other already-filed charging documents in the case. ROA.19-11048.96. The parties did

not agree on a particular sentence or Guideline sentencing range. Chandler acknowledged that the statutory maximum was twenty years, and that he would be sentenced after the district court had considered the applicable Sentencing Guidelines. ROA.19-11047.94.

The agreement says that "the actual sentence imposed (so long as it is within the statutory maximum) is solely within the discretion of the Court." ROA.19-11047.94. But that acknowledgement did not vitiate the Government's duty of good faith and fair dealing in performance with regard to sentencing. Chandler had a reasonable understanding that it would provide the court accurate factual information and correct any misstatements of fact so the court could impose an appropriate sentence based on an accurate record. *See United States v. Saling*, 205 F.3d at 768. He also had a reasonable expectation that the Government would speak up where the court lacked certain relevant information or where the court was mistaken about certain facts. *See United States v. Muñoz*, 408 F.3d at 227. These expectations were reasonable because sentences based upon incomplete facts or factual inaccuracies are abhorrent to our legal system. *United States v. Block*, 660 F.2d 1086, 1090–92 (5th Cir. United B Nov. 1981).

**The Sentencing Guidelines and Presentence Report**

Norman Chandler executed a factual résumé in support of his plea of guilty. His factual résumé did not identify specific quantities of methamphetamine that he had distributed nor did it identify his supplier.

**Stipulated Facts**

1.  Between in or about October 2016 and April 2017, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, Norman Chandler, knowingly possessed with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C).

2.  More specifically, between in or about October 2016 and April 2017, while in Dallas, Texas, Chandler purchased ounce quantities of methamphetamine from other individuals, which he would then sell to other individuals.

3.  The defendant agrees that the defendant committed all the essential elements of the offense. This factual resume [sic] is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count Two of the Indictment.

ROA.19-11047.39–40.

The presentence report identified Estevan Adrian Graciano as Chandler's most recent supplier. ROA.19-11047.105. The report recounted that Chandler had self-admitted to purchasing and distributing at least 100 kilograms from Graciano over a period of approximately six months. ROA.19-11047.105. The probation officer used Chandler's distribution from Graciano to calculate his Base Offense Level. ROA.19-11047.107. She also applied a two-point enhancement under U.S.S.G. 2D1.1(b)(5) based upon Graciano's importation of methamphetamine from Mexico. ROA.19-11047.108.

The Government did not file any objections and accepted the report's findings. ROA.19-11047.125, 135. It was aware that the district court would likely want informa-

tion about Graciano at sentencing because the PSR stated that the investigation revealed that "Chandler purchased and received methamphetamine directly from Graciano and sold the narcotics to unindicted coconspirators." ROA.19-11047.106. Graciano was also listed in the PSR as a related case. ROA.19-11047.102. *See* 28 U.S.C. 991(a)(1)(B) (establishing a purpose of the Sentencing Commission as being the avoidance of unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct); 28 U.S.C. 994(f) (delineating that the Sentencing Commission pay particular attention to reducing unwarranted sentencing disparities).

**The Government's Misstatement of Material Fact**

The district court began the sentencing hearing by confirming that it had reviewed the PSR, addendum, and the parties' objections. ROA.19-11047.67. It overruled Chandler's objections and determined that the Total Offense Level was 39, the Criminal History Category was V, and that the advisory Guideline Imprisonment Range was 360 months to life. ROA.19-11047.67–70. It observed that the statutory maximum to the offense capped the term of imprisonment to 240 months. ROA.19-11047.70. It noted Chandler's severe injuries stemming from a motorcycle accident, substance abuse, and family circumstances. ROA.19-11047.71–74. It also heard from his common-law wife, statements from counsel, and from the defendant himself ROA.19-11047.74–78. It observed that his sentence was "dramatically capped" from the advisory Guideline Imprisonment Range, and called on the Government to comment. ROA.19-11047.78–79.

The prosecutor introduced facts about Chandler's motorcycle accident that were not contained in the PSR—that he had tried to kill a federal agent and wound up crashing his bike. ROA.19-11047.79–80. He added that the case was "part of a much, much bigger case that this Court doesn't really know about in the sense that I have indicted 67 Aryan Brotherhood members and in the last years" in another court. ROA.19-11047.80. He went on, "Estevan Graciano is the biggest supplier in that case. This Defendant was receiving methamphetamine directly from him." ROA.19-11047.80. Chandler had not been included in the larger case only "because of the timing." ROA.19-11047.81. Then this exchange occurred.

Court:      What was the sentence — I don't expect you to list 67 or 69 sentences. What was his —

Gov't.:     I probably could, Your Honor.

Court:      You probably could. What did his supplier get from Judge Fitzwater?

Gov't.:     Well, Your Honor, it's interesting. So Judge Fitzwater got 67 defendants. Judge Kinkeade got 8 of them. Graciano was in Judge Kinkeade's court. I'll leave it at that. He received around a 15-year sentence. So I understand that issue, Your Honor, but the large chunk of these defendants have been getting 20-year sentences in Judge Fitzwater's court.

Court:      Okay. All right.

ROA.19-11047.82.

He concluded its argument by saying, "I think that the 240-month cap is generous and it is sympathetic to this Defendant. I don't think he deserves more." ROA.19-11047.82. The court noted, "I think everyone knows that I very much like to keep track of related cases," and looked to the factors listed under 18 U.S.C. 3553(a), including, presumably 18 U.S.C. 3553(a)(6) (the need to avoid unwarranted sentencing disparities among defendants with similar records which have been found guilty of similar conduct), "to impose a sentence that [was] sufficient but not greater than necessary." ROA.19-11047.85.

After recounting some of the facts entered into the record, the court said it was the sentence given to Graciano, in particular, that it found most compelling.

> I will say that of the things that [the prosecutor] said to me, the things that are most compelling to me are the issues related to the Agent, but, particularly, the sentence that was given to the Defendant's supplier. It is not, in this Court's view, just for me to give this Defendant more time than his supplier, who is at the top of the food chain in this offense, was given. It may very well be that if we were starting anew, I might be sentencing the Defendant to the 20-year cap, but in light of the fact that the person who was at the top of the food chain received 15 years, the Court will impose a sentence of 15 years.

ROA.19-11047.86.

The prosecutor had misstated Graciano's sentence to the court. Graciano had been sentenced to 160 months (13.33 years), not 15 years. ROA.20-11233.92. But he did this after reassuring the court that he could recount any of the 60+ sentences handed down in the larger case. ROA.19-11047.82 ("I probably could, your Honor.").

**The Government Breached Its Duty**

The Government's misstatement of fact requires reversal because it was material to the district court's determination of the appropriate sentence. It does not matter if it was an honest mistake. It is well settled that that Government may not "stand mute in the face of factual inaccuracies or withhold relevant information from the court." *United States v. Block*, 660 F.2d at 1090–92; *United States v. Pizzolato*, 655 F.3d at 410. So it certainly cannot introduce factual inaccuracies to sentencing proceedings. It had a duty to ensure that the district court had complete and accurate information concerning Chandler and relevant sentencing facts to enable it to impose an appropriate sentence upon a complete and accurate record. *See id.*; *United States v. Saling*, 205 F.3d at 768.

Here, the Government gave the district court the impression that it, consistent with 18 U.S.C. 3553(a)(6), had in hand accurate sentencing information about Chandler's coconspirators. The district court, after hearing arguments from counsel, emphasized that it found Graciano's sentence particularly compelling because he was the "top of the food chain" and the court did not find it just to impose a sentence higher than his. ROA.19-11047.86. The Government misinformed the court of Graciano's sentence, and that misinformation led to a sentence that was twenty months higher than Graciano's. ROA.20-11233.96.  The record demonstrates Chandler's sentence would not have exceeded 160 months if the Government had provided accurate information to the court. *See* ROA.20-11233.96 (conceding the Government provided inaccurate information about Graciano's sentence).

It is no argument to say that Chandler's 180-month sentence was "just and reasonable" because Graciano's sentence was "just one of several considerations contemplated by the court, including the seriousness of the crime, Chandler's criminal history, and his medical issues." ROA.20-11233.93. The court stated that it had considered those issues, but notified the Government that it "very much like[d] to keep track of related cases," and explicitly said that it found Graciano's sentence compelling. ROA.19-11047.85. It did not desire to sentence Chandler to a higher sentence than his. ROA.19-11047.65. The Government had the duty not only not to mislead, but also to ensure that its representation of Graciano's sentence was factually accurate. It breached that duty by making an off-the-cuff guesstimate during sentencing and then failing to inform the court of its factual misstatement while the court still had the capacity to substantively modify the sentence. *See* Fed. R. Crim. P. 35(a); *United States v. Spencer*, 513 F.3d 490, 491 (5th Cir. 2008).

**The Court's Rule 36 Denial Was Not Dispositive**

Norman Chandler was sentenced on September 11, 2019. ROA.19-11047.65. The district court entered a written judgment two days later. ROA.19-11047.50–56. There is no indication in the record that the Government sought to correct its false representation before Chandler filed a Rule 36 motion on October 23, 2021, in which he apprised the district court of the issue. ROA.20-11233.232–74. The court ordered the Government to file a response specifically to that issue. ROA.20-11233.91.

The Government admitted that it had inaccurately recited the length of Graciano's sentence at the sentencing hearing, and apologized for the error. ROA.20-11233.96. But then it justified it actions by arguing that the court's 180-month was "just and reasonable and should not be disturbed." ROA.20-11233.93. It argued that Rule 36 did not allow for a substantive change in the sentence and that the court could deny the motion on that basis alone. ROA.20-11233.96. The district court agreed, saying it was "inappropriate for it to use Rule 36 to modify [Chandler's] sentence." ROA.20-11233.431. The court's review of additional evidence and comment that it did not cause it to reconsider Chandler's sentence is immaterial and advisory only because it was without power to substantively modify the sentence.

**The Error Mandates Reversal**

The Government's failure to provide the district court accurate information upon which it could impose an appropriate sentence constitutes a breach of its duty to the court and a breach of its duty of good faith and fair dealing to Chandler. Its breach affects the fairness, integrity, and public reputation of judicial proceedings because sentences based upon incomplete facts or factual inaccuracies are abhorrent to our legal system. The breach constitutes plain error without regard to whether the district court was influenced by its actions. *See United States v. Muñoz,* 408 F.3d at 226; *United States v. Goldfaden,* 959 F.2d 1323, 1328 (5th Cir. 1992) (concluding that breach of a plea agreement can constitute plain error); *United States v. Saling,* 205 F.3d at 766–67 (5th Cir. 2000) ("If a breach has in fact

occurred, the sentence must be vacated without regard to whether the judge was influenced by the government's actions"); *see also United States v. Reeves*, 255 F.3d at 209. Thus, the case requires reversal and a remand to the district court for resentencing.

## Conclusion

For the foregoing reasons, this Court should vacate the district court's judgment and remand the case for resentencing.

Dated: October 20, 2021                Respectfully submitted,

SMYTHE PC

By: */s/ Peter C. Smythe*
    Peter C. Smythe
    State Bar No. 00788442

777 Main Street, Suite 600
Fort Worth, Texas 76102
Telephone: (817) 666-9475
Email: petersmythe@appeals.me

*Appointed Counsel for the Appellant*

## Certificate of Service

I, Peter Smythe, certify that today, October 20, 2021, I served a copy of this brief for Appellant upon opposing counsel via the clerk's electronic filing system and to Mr. Chandler via first-class mail, postage pre-paid, to-wit:

Leigha Simonton, *appellate counsel*
U.S. Attorney's Office – Dallas
1100 Commerce Street
Third Floor
Dallas, Texas 75242

Mr. Norman Wayne Chandler
Reg. No. 57803-177
FCI – Forrest City
P.O. Box 3000
Forrest City, AR 72336

*/s/ Peter C. Smythe*
Peter C. Smythe

## Certificate of Compliance

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

This brief complies with the type-volume of Federal Rule of Appellate Procedure because this brief contains 7,128 words. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure and the type style requirements of the rules because is has been prepared in a proportionally spaced typeface using Pages for the Mac in Arno Pro 14 pt. font.

*/s/ Peter Smythe*
Peter Smythe
Attorney for the Appellant
Dated: October 20, 2021

## ECF Certifications

This brief complies with ECF pleading requirements because we've made the required privacy redactions, the electronic submission is an exact copy of the paper document, and the electronic filing is free of viruses.

/s/ Peter C. Smythe

Peter C. Smythe
*Attorney for the Appellant*
Dated: October 20, 2021